| | |
|---|---|
| SARAH C. YARNEY, | CASE NO. 3:09-cv-00050 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| WELLS FARGO BANK, N.A. ET AL, | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This matter is before the Court upon Defendant EquiFirst Corp.'s (hereinafter "EquiFirst") Motion to Dismiss (docket no. 20), and Defendant Statewide Mortgage Corp.'s (hereinafter "Statewide") Motion to Dismiss (docket no. 22), and the accompanying memoranda and attachments related thereto. After full consideration of the arguments set forth therein, and presented to the Court at oral argument, for the aforementioned reasons, the Court will grant, in part, EquiFirst's Motion to Dismiss (docket no. 20), in an accompanying Order, to follow. The Court will dismiss Plaintiff's sole federal cause of action arising under the Truth in Lending Act, *without prejudice*. If Plaintiff does not properly amend this cause of action within 14 days, the Court will decline supplemental jurisdiction, and the surviving state law claims will be remanded to the Circuit Court of the City of Charlottesville, from which this case was removed.

Plaintiff Sarah C. Yarney (hereinafter "Plaintiff") brings this action against EquiFirst, Statewide, Defendant Shaffer Title & Escrow, Inc. (hereinafter "Shaffer"), and the current holder of the note, Defendant Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") (collectively "Defendants"), alleging that she was the victim of predatory lending practices, which resulted in a refinancing that was at a higher rate than that initially promised her, and in the accumulation of exorbitant fees.

The underlying subject matter of this dispute is Plaintiff's principal place of residence, which is the property located at 718 West Street, Charlottesville, Virginia (hereinafter "the Property"). Amended Complaint, at ¶ 1. There are two refinancing transactions of Plaintiff's home mortgage loan that are pertinent to the parties' dispute. Plaintiff obtained the first refinancing of her home mortgage loan through broker Statewide on April 28, 2006 (hereinafter "First Refinance Loan"). *Id.* at ¶ 6. While Plaintiff alleges that she was originally promised an initial interest rate of 2.5% on this loan, the actual interest rate delivered at closing was 6.84%. *Id.* at ¶¶ 7, 8. Furthermore, Plaintiff alleges that Statewide, through its President and Chief Executive Officer Brian E. Lacy (or through its other employees), promised Plaintiff that if she made timely payments on the First Refinance Loan for one year, her loan would be refinanced at a lower interest rate. *Id.* at ¶ 10. The mortgage lender for the First Refinance Loan was Decision One Mortgage Company, LLC; EquiFirst was not involved. *See* Amended Complaint, ex. B. The terms of the First Refinance Loan were as follows: the principal loan amount was $152,000.00, the initial interest rate was 6.84%, and the total monthly mortgage payment was $1,024.49. *See* Amended Complaint, at ¶ 9; Amended Complaint, ex. B.

---

[1] Unless otherwise stated, the background will be drawn from Plaintiff's Amended Complaint, as on a motion to dismiss, the Court must take all well-pleaded material allegations as admitted, and view them in the light most favorable to the plaintiff. *See e.g.*, *Dunn v. Borta*, 369 F.3d 421, 423 n.1 (4th Cir. 2004) (citing *De Sole v. United States*, 947 F.2d

At least as early as January 2007, Plaintiff alleges that Statewide began to periodically solicit her, by phone and mail, to refinance her home mortgage loan again through Statewide. Amended Complaint, at ¶ 11. Plaintiff responded to these solicitations by expressing interest in obtaining another refinancing of her home mortgage loan, in reliance upon Statewide's promise to refinance at a lower interest rate, and doing so "for the purpose of obtaining the lower interest rate promised and paying off other debt." *Id.* at ¶ 13.

On March 8, 2007, Plaintiff applied to Statewide over the phone seeking this lower interest rate. *Id.* at ¶ 15. On March 13, 2007, Statewide mailed Plaintiff a Mortgage Broker Contract signed by Brian Lacey, which stated as follows: "I represent you, but I may receive a fee from a lender. I am your agent and I will get you the most favorable mortgage loan that meets your objectives . . . For arranging your loan of up to $192,000 at an interest rate of 8.550%, I will receive no greater than $399 Proc. Fee + 2.0% points and other compensation of 1.0%, so that my total compensation will be no greater than 3.0% + $399 Proc. Fee." *Id.* at ¶ 17. Plaintiff then signed the Mortgage Broker Contract. *Id.* Shaffer, in the role of a settlement agent for this subsequent refinancing transaction, made arrangements for the closing to take place at Plaintiff's residence. On March 22, 2007, Plaintiff obtained the second refinancing of her home mortgage loan, again using Statewide as the broker, and this time with EquiFirst as the mortgage lender (hereinafter "Second Refinance Loan"). *Id.* at ¶ 23; Amended Complaint, ex. H, J. The terms of the Second Refinance Loan were as follows: the principal loan amount was $192,000.00, 2 year fixed, 6 month adjustable rate mortgage, with a balloon payment of $174,609.34 at the end of the loan. *Id.* at ¶ 29.  Plaintiff alleges that she fell victim to Defendants' predatory lending practices, which caused her to incur exorbitant fees for a loan that was not at the lower rate promised, and not in her best interest. *Id.* at 1.

1169, 1171 (4th Cir. 1991)).

Plaintiff's Amended Complaint contains the following causes of action, raised against various Defendants: (1) violations of the Virginia Mortgage Lender and Broker Act, Va. Code § 6.1-408 *et seq*. (hereinafter "MLBA"); (2) violations of the Virginia Home Solicitation Sales Act, Va. Code § 59.1-21.1 *et seq*. (hereinafter "VHSSA"); (3) breach of contract; (4) violations of the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq*. (hereinafter "VCPA"); and lastly (5) violations of the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (hereinafter "TILA").

On August 3, 2009, Wells Fargo removed the suit, which had been proceeding in the Circuit Court of the City of Charlottesville, to this Court on the grounds that there was federal question jurisdiction under 28 U.S.C. §§ 1331 resulting from Plaintiff's TILA claim (docket no. 1).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all the allegations in the complaint taken as true

and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a Motion to Dismiss." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1950 (2009).

## III. DISCUSSION

Congress enacted TILA because it found that strengthening "the informed use of credit" would promote economic stabilization and competition among financial institutions in extending consumer credit. *See* 15 U.S.C. § 1601(a). The purpose of the statutory scheme is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Id.*; *see also Cetto v. LaSalle Bank Nat'l Ass'n*, 518 F.3d 263, 265 n.1 (4th Cir. 2008) (same).

Lenders must, under TILA, disclose the cost of credit by providing to the consumer certain disclosures required by statute and regulation. A lender's failure to comply with the disclosure requirements under TILA will potentially give rise to a cause of action against it for statutory damages, actual damages, attorney's fees, and rescission. *See e.g.*, *Stuart v. LaSalle Bank Nat'l Ass'n*, No. 3:09-cv-459, 2010 WL 582162, at *3 (E.D. Va. Feb. 11, 2010) (citing 15 U.S.C. §§ 1635(a) & (g), 1640(a)). For example, when a consumer engages in a credit transaction in which a security interest is retained in his principal dwelling, TILA ordinarily affords the consumer a right to rescind the transaction within a three-day period. *See* 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.23(a)(1) – (a)(3); *see also McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 147 n.3 (3d

Cir. 2009) ("A mortgagor always has the right to rescind under TILA within three days of signing a loan."). However, if the required notice of right to rescind, or the required material disclosures are not delivered, the consumer's right to rescind is extended from three days to three years. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The term "material disclosures" is defined in Regulation Z (TILA's implementing regulations), and means "the required disclosures of the annual percentage rate, the finance charge, the amount financed, and the disclosures and limitations referred to in §§ 226.32(c) and (d) and 226.35(b)(2)." 12 C.F.R. § 226.23(a)(3) n.48. When a consumer exercises the right to rescind under TILA, he is "not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b); *see also* 12 C.F.R. § 226.23(d).

## A. Rescission

Plaintiff argues that she has a continuing right to rescind the Second Refinance Loan because "the disclosures were not proper," on the basis of her allegations that: (1) "[t]he Truth-in-Lending Disclosures [were] not accurate;" and (2) she "received only one copy of the Notice of Right to Cancel." Amended Complaint, at ¶¶ 78-79.

### 1. Inaccurate Disclosures

Plaintiff has alleged several inaccuracies in the Truth-in-Lending Disclosures, as set forth below. All underlying figures that are allegedly inaccurate were disclosed in the HUD-1 Settlement Statement, and are contradicted by allegedly accurate figures in the Disbursement Summary, or on other bases, as identified. *See* Amended Complaint, at ¶¶ 31-37; Amended Complaint ex. H, J.

| Description | Inaccurate Disclosure | Actual Disbursement | Variation[2] |
|---|---|---|---|
| Cash to Borrower | $24,429.28 | $25,532.23 | - $1,102.95 |
| Payoff to Countrywide | $157,000.00 | $155.897.05 | + $1,102.95 |
| ReQuire (Release Tracking) | $70.00 | $35.00 | + $35.00 |
| Shaffer (Settlement Agent's Fees) | $575.00 | $610.00 | - $35.00 |
| James E. Bunn (Notary Fees) | $115.00 | $115.00 | + $80.00 (allegation)[3] |
| Cheryl Nicole Johnson (Appraisal Fee) | $400.00 | $400.00 | + $100.00 (allegation)[4] |

Plaintiff argues that each of the aforementioned overstatements in the HUD-1 "regards a number that is part of the Amount Financed," and therefore, "the result is an overstatement of the Amount Financed." Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12. Further, Plaintiff appears to argue that this alleged overstatement is significant both in its own right, because "[t]he amount to be financed is a material disclosure as defined by 15 U.S.C. § 1602(u)," and because "lowering the amount financed while keeping the payments the same will always increase both the

---

[2] A minus sign representing an understatement in the HUD-1 Settlement Statement, and a plus sign representing an overstatement.

[3] With respect to the notary fees, Plaintiff does not argue that the amount disbursed for notary fees varied from the amount disclosed. *See* Amended Complaint, at ¶ 36. Instead, Plaintiff argues that although $115.00 was disclosed and actually disbursed in notary fees, "the Notary performed only 7 notarial acts, not all of which were necessary, for which his fee is limited by law to $35, that is $5 for each notarial act." *Id.* Accordingly, taking all Plaintiff's allegations as true and drawing all reasonable inferences in her favor, *Chao*, 415 F.3d at 346, the Court will assume there was an $80.00 overstatement in notary fees. *See id.*; *see also* Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12 (arguing that there was an "overstatement of the notary fee by $80.00").

[4] With respect to the appraisal fee, Plaintiff does not argue that the amount disbursed for the appraisal fee ($400.00) varied from the amount disclosed ($400.00). *See* Amended Complaint, at ¶ 37. Instead, Plaintiff argues that the appraisal fee was improperly disclosed because the invoice from the appraiser reflects only $300.00 billed. *See* Amended Complaint, ex. K.

annual percentage rate and the finance charge," and vice versa. *See* Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 11-12. In reply, EquiFirst does not contest the effect of the alleged inaccuracies on the amount financed. Instead, EquiFirst argues that "Plaintiff provides no factual allegations regarding the alleged inaccuracy of the amount financed *in her Amended Complaint*." EquiFirst's Reply Memorandum, at 3 (emphasis added). As the Second Refinance Loan is a 'closed-end credit' transaction,[5] the Court proceeds to address Plaintiff's allegations that she did not receive proper and accurate required disclosures under TILA and Regulation Z. The mortgage lender is required to disclose the "amount financed," which is, generally speaking, "the net amount of money lent to the borrower," *Frazier v. Accredited Home Lenders*, 607 F.Supp.2d 1254, 1256 (M.D. Ala. 2009), or "'the amount of credit of which the consumer has actual use.'" *Gibson v. LTD, Inc.*, 434 F.3d 275, 280 (4th Cir. 2006) (quoting 15 U.S.C. § 1638(a)(2)(A)). The "amount financed" is calculated by "(1) Determining the principal loan amount or the cash price (subtracting any downpayment); (2) Adding any other amounts that are financed by the creditor and are not part of

---

[5] Before the Court can address whether there was a violation of the disclosure requirements under TILA and Regulation Z, it must first determine whether the Second Refinance Loan is classified as an 'open-end credit' transaction, or a 'closed-end credit' transaction. *See Benion v. Bank One, Dayton, N.A.*, 144 F.3d 1056, 1057 (7th Cir. 1998) ("The Truth in Lending Act has separate disclosure requirements for 'open-end' and 'closed-end' credit transactions."). An 'open-end credit' transaction is defined as one in which consumer credit is extended by a creditor under a plan where the creditor "reasonably contemplates repeated transactions" and "may impose a finance charge from time to time on an outstanding unpaid balance," and where "[t]he amount of credit that may be extended to the consumer during the term of the plan . . . is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. § 226.2(a)(20). An 'open-end credit' transaction would be, for example, a transaction drawing upon an open line of credit, such as a credit card. *See Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 66-67 (D. Conn. 1982). Conversely, 'closed-end credit' is broadly defined by regulation as "consumer credit other than 'open-end credit.'" 12 C.F.R. § 226.2(a)(10).

Although this issue was not explicitly addressed by the parties, it appears beyond dispute that the Second Refinance Loan is a 'closed-end credit' transaction. The allegations set forth by the Plaintiff make clear that this was a transaction by which EquiFirst would fully perform under the loan agreement by making a single loan of $192,000 at the time of closing, rather than one by which EquiFirst reasonably contemplated making repeated extensions of credit. *See e.g.*, *Johnston v. Lindaur*, No. 2:07-cv-01280, 2010 WL 147939, at *2 (E.D. Cal. Jan. 12, 2010) (finding that a refinancing of a home mortgage loan memorialized in an adjustable rate note and secured by a deed of trust in plaintiff's residence was a 'closed-end credit' transaction); *Briscoe v. Deutsche Bank Nat'l Trust Co.*, No. 08-cv-1279, 2008 WL 4852977, at *2 (N.D. Ill. Nov. 7, 2008) (considering disclosure requirements for 'closed-end credit' transactions under TILA, where lender granted borrower an adjustable rate loan to refinance her mortgage); *McAnaney v. Astoria Fin. Corp.*, No. 04-cv-1101, 2007 WL 2702348, at *6 (E.D.N.Y. Sept. 12, 2007) (noting that a 'closed-end credit' transaction is one where "the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan

the finance charge; and (3) Subtracting any prepaid finance charge." 12 C.F.R. § 226.18(b). TILA

also requires that the mortgage lender disclose the applicable "finance charge" for a mortgage, which

is defined as "the sum of all charges . . . imposed directly or indirectly by the creditor as an incident

to the extension of credit," such as interest, service charges, and the like. 15 U.S.C. § 1605(a). The

"finance charge" is the cost to the borrower of obtaining the loan, including interest. *See Hudson v.

Bank of America, N.A.*, No. 3:09-cv-462, 2010 WL 2365588, at *3 (E.D. Va. June 11, 2010);

*Frazier*, 607 F.Supp.2d at 1256.

However, the disclosure requirements under TILA provide for a small margin of error,

known as the "tolerances for accuracy" provision, before the mortgage lender can be potentially

subject to claims for damages or rescission. *See McCutcheon*, 560 F.3d at 147 (noting that "TILA

leaves some room for small errors"); *Stuart*, 2010 WL 582162, at *3 n.3 (same); *In re Strong*, 356

B.R. 121, 165 (Bankr. E.D. Pa. 2004) (noting that "TILA contains a 'safe harbour' or margin of error

for annual percentage rate and finance charge disclosures"). In fact, Congress specifically amended

TILA in 1995 to include a "tolerances for accuracy" provision "in an effort to prevent creditors from

being subject to 'extraordinary liability' for small disclosure discrepancies." *In re Sterten*, 546 F.3d

278, 280 (3d Cir. 2008) (citing 141 Cong. Rec. H9514-01 (daily ed. Sept. 27, 1995) (statement of

Rep. Leach)). While there are several different margins for error under the "tolerances for accuracy"

provision, depending upon the particular type of disclosure and the manner of relief sought, the one

implicated at present specifically covers rescission claims. For 'closed-end credit' transactions "that

are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures

affected by any finance charge . . . shall be treated as accurate for purposes of section 1635 of this

title [concerning the borrower's right of rescission] if . . . *the amount disclosed as the finance charge*

---

like a mortgage or a car loan") (internal quotation marks omitted).

*does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended.*" 15 U.S.C. § 1605(f)(2)(A) (emphasis added). Similarly, the regulation covering this statutory provision provides that "the finance charge and other disclosures affected by the finance charge (such as the amount financed and the annual percentage rate) shall be considered accurate for purposes of this section if the disclosed finance charge . . . *is understated by no more than 1/2 of 1 percent of the face amount of the note or $100, whichever is greater.*" 12 C.F.R. § 226.23(g)(1)(i) (emphasis added).

It is undisputed that the principal amount of the Second Refinance Loan was $192,000.00. *See* Amended Complaint, at ¶ 29; Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 4; EquiFirst's Memorandum in Support of Motion to Dismiss, at 2. Nowhere, and especially nowhere in Plaintiff's Amended Complaint, does she allege that the principal amount was any other figure. Accordingly, one-half of one percent of $192,000.00, the percentage set forth in 15 U.S.C. § 1605(f)(2)(A) and 12 C.F.R. § 226.23(g)(1)(i), yields a margin of error of $960.00 between the Second Refinance Loan's disclosed finance charge, being $639,816.79, and its actual finance charge.

Plaintiff's rescission claim is based upon, in part, her allegation that the HUD-1 form contained inaccurate material disclosures, particularly with regard to the annual percentage rate, the finance charge, and the amount financed. *See* 12 C.F.R. § 226.23(a)(3) n.48 (including these terms in the definition of "material disclosures"). Plaintiff does not explicitly allege how the identified inaccuracies in the HUD-1 form impact the finance charge or the annual percentage rate of her loan, nor does she allege the combined effect of the alleged inaccuracies upon the amount financed. Instead, Plaintiff argues generally that "[c]reditors have an incentive to improperly shift charges from the finance charge to the amount financed because if the finance charge is lower then the disclosed annual percentage rate is lower." Plaintiff's Opposition to EquiFirst's Motion to Dismiss,

at 10. The relationship between the amount financed, the finance charge and annual percentage rate, was explained in the *Adams* case, as Plaintiff has noted. *See Adams v. Plaza Fin. Co., Inc.*, 168 F.3d 932, 933 (7th Cir. 1999) (Posner, J.) (writing that "items added to the finance charge count as interest in computing the disclosed annual interest rate, and so increase that rate, while items added to the amount financed increase the denominator in the interest-rate calculation and so reduce the disclosed rate"). In sum, Plaintiff argues that EquiFirst has improperly overstated the amount financed in its HUD-1 disclosure, by including charges therein that actually should have been calculated in the finance charge. Allegedly, this resulted in an understatement of the finance charge and annual percentage rate in the HUD-1 disclosure.

The Court finds, taking all Plaintiff's allegations as true and drawing all reasonable inferences in her favor, that Plaintiff has identified, at most, that the $185,396.10 figure[6] disclosed as the amount financed, *see* Amended Complaint, ex. I, was overstated by $215.00. However, Plaintiff must make allegations which, if taken as true, would state a plausible claim that the alleged inaccurate disclosures would exceed TILA's tolerances for accuracy, which in this case is $960.00. She has not. Assuming that the amount financed was overstated in the manner alleged by Plaintiff, it, as well as the finance charge and annual percentage rate figures, would still fall within TILA's tolerance for accuracy.

Plaintiff has alleged that the disclosed amount financed reflected an overstatement of $1,102.95 in its payoff to Countrywide. *See* Amended Complaint, at ¶ 33; Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12. Plaintiff has also alleged a corresponding understatement of $1,102.95 in the disclosed figure of cash to the borrower. *See* Amended Complaint, at ¶ 32;

---

[6] Note that the term "amount financed" is "derived by making certain adjustments to the principal loan amount, most notably the subtraction of any prepaid finance charge," and therefore the amount financed "differs from the principal amount of the loan." *Smith v. Anderson*, 801 F.2d 661, 663 (4th Cir. 1986). This explains the difference between the

Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12. However, both of these figures are reflected in the calculation of the amount financed. The lender is to include in its itemization of the amount financed "[t]he amount of any proceeds distributed directly to the consumer." 12 C.F.R. § 226.18(c)(1)(i); *see also* 15 U.S.C. § 1638(a)(2)(B)(i) (including in the amount financed "the amount that is or will be paid directly to the consumer"). The lender is also to include "[a]ny amounts paid to other persons by the creditor on the consumer's behalf." 12 C.F.R. § 226.18(c)(1)(iii); *see also* 15 U.S.C. § 1638(a)(2)(B)(iii) (including in the amount financed "each amount that is or will be paid to third persons by the creditor on the consumer's behalf"). In the refinancing of Plaintiff's mortgage, both of these sums are included in any calculation of the amount financed, as that term is defined by statute and regulation. Accepting Plaintiff's allegations that these figures were inaccurately disclosed, the net result of these inaccuracies balance each other out, and consequently, would result in no overstatement in the disclosed amount financed.[7]

From this point forward, it is clear that Plaintiff has not stated a plausible claim for relief, which would require that the alleged inaccuracies in the TILA disclosures exceed the $960.00 tolerances for accuracy. The remaining alleged inaccuracies in the disclosed amount financed would, at most, result in a total overstatement of $215.00.[8] As stated previously, Plaintiff appears to argue

---

disclosed amount financed ($185,396.10) and the principal of the loan ($192,000.00).

[7] It appears that Plaintiff recognizes this in her opposition brief. After identifying each alleged inaccuracy in the HUD-1, including the overstatement of the Countrywide payoff by $1,102.96, Plaintiff argues that "although the HUD-1 then shows that [she] received $24,429.28 even though she actually received $25,523.23, that $1,102.97 [sic] difference *does not balance out the overstatements*. Because each of these overstatements regards a number that is part of the Amount Financed, the result is an overstatement of the Amount Financed." Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12 (emphasis added). It therefore appears that Plaintiff is arguing that what matters is that there is a net overstatement in the disclosed Amount Financed. Plaintiff, however, not address the importance of the type, and magnitude, of the alleged disclosure error to her rescission claim.

[8] The Amended Complaint alleges additional errors on the HUD-1 that "include an overstatement of the reQuire fee by $35.00, overstatement of the notary fee by $80.00, [and] overstatement of the appraisal fee by $100.00." Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12; *see also* Amended Complaint, at ¶¶ 34-37. Their sum is $215.00.

that the alleged inaccuracies are material to her rescission claim, on the theory that the lender improperly shifted certain charges from the finance charge to the amount financed. *See e.g.*, Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 10 ("In a transaction subject to rescission rights, once a consumer shows a charge in the amount financed is actually a finance charge, the consumer has stated a claim for rescission."); *id.* ("Creditors have an incentive to improperly shift charges from the finance charge to the amount financed because if the finance charge is lower then the disclosed annual percentage rate is lower.").

Cognizant of this practice and its resulting consequences, *see Adams*, 168 F.3d at 935, even if the Court were to assume that *all* alleged inaccuracies identified by Plaintiff were the result of charges improperly shifted from the finance charge to the amount financed, the disclosure would still only be a $215.00 understatement of the actual finance charge. This falls well within the $960.00 tolerance for accuracy. Then, pursuant to Regulation Z, "the finance charge and other disclosures affected by the finance charge (*including the amount financed and the annual percentage rate*) shall be considered accurate for purposes of this section if the disclosed finance charge . . . is understated by no more than 1/2 of 1 percent of the face amount of the note." 12 C.F.R. § 226.23(g)(1)(i) (emphasis added). Accordingly, if the disclosed finance charge was understated by $215.00, that material disclosure, as well as the amount financed and annual percentage rate, would be considered accurate so as not to give rise to a claim for rescission.

Plaintiff also appears to argue that the alleged overstatement in the HUD-1 of the amount financed results in an inaccurate disclosure on an alternate theory, independently of any effect this inaccuracy would have upon the finance charge. *See* Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 11 (arguing that "because some of these errors result in an inaccurate disclosure of the Amount Financed, they result in a material violation," but not stating its effect upon the finance

charge); *id.* at 12 ("Because each of these overstatements regards a number that is part of the Amount Financed, the result is an overstatement of the Amount Financed."). As Plaintiff could not prevail upon a theory that the lender had improperly shifted charges to the amount financed figure, neither can Plaintiff prevail upon a theory that the inaccuracies in the HUD-1 rendered the amount financed figure inaccurate, irrespective of their impact upon the finance charge. The two terms are undeniably inversely related. *See e.g. Peterson v. Spectra Fin., Inc.*, Civil No. 06-3796, 2007 WL 967334, at *3 (D. Minn. Mar. 29, 2007) ("If a lender understates the amount financed, it effectively overstates the finance charge because the amount financed and the finance charge are inversely related."); *In re Strong*, 356 B.R. at 167 n. 40 (noting that "[o]ne method of calculating the finance charge is to first compute the amount financed and subtract that figure from the total of payments").

Plaintiff alleges that the HUD-1 shows a payment of $70.00 to reQuire for tracking the release of property liens when the actual disbursement was only $35.00, resulting in an overstatement of $35.00. *See* Amended Complaint, at ¶ 34. She identifies further overstatements in the amount of $80.00 for notary fees, and $100 for the home appraisal. *Id.* at ¶¶ 36-37. "Because each of these overstatements regards a number that is part of the Amount Financed, the result is an overstatement of the Amount Financed." Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 12. The flaw in Plaintiff's argument, assuming she is arguing that this Court *solely* should look to an allegedly inaccurate disclosure of an amount financed figure (and not the finance charge figure) lies with the rules for classifying an overstatement. Generally, "[f]ees for title examination, abstract of title, title insurance, property survey, and similar purposes" should be excluded from the finance charge where the fees are bona fide and reasonable. 12 C.F.R. § 226.4(c)(7)(i). Where such fees are not bona fide and reasonable, they are to be included in the finance charge. Similarly, notary fees and property appraisal fees are excluded from the finance charge so long as they are bona fide and

reasonable in amount. 12 C.F.R. § 226.4(c)(7)(iii)-(iv). In effect, Plaintiff argues that the fees are

not bona fide and reasonable. Not only has she alleged them to be inaccurate, she has simultaneously

argued that creditors have an incentive to "conceal finance charges in the amount financed" in order

to artificially lower the disclosed finance charge and annual percentage rate. Plaintiff's Opposition to

EquiFirst's Motion to Dismiss, at 10. Accordingly, on Plaintiff's allegations, she has explicitly

alleged that the amount financed disclosure was *overstated* by, at the most,[9] $215.00, which

corresponds to an *understatement* of the finance charge by $215.00. *See* 15 U.S.C. § 1638(a)(5)

(providing that the "total of payments" constitutes the "sum of the amount financed and the finance

charge"); *VanDenBroeck v. Commonpoint Mortg. Co.*, 22 F.Supp.2d 677, 688 (W.D. Mich. 1998)

(stating that "[t]he amount financed disclosure is a disclosure affected by the finance charge because

an amount not included in the finance charge must be included in the amount financed disclosure"

(internal quotation marks omitted)). The Court can discern no basis for an argument that an

*overstatement* of the amount financed should be an inaccurate disclosure under TILA's tolerances

for accuracy provision, whereas an equivalent *understatement* of the finance charge would be

considered an accurate disclosure. With this principle in mind, and in light of 12 C.F.R. §

226.23(g)(1)(i), which clearly connects the tolerances for accuracy for the amount financed, annual

percentage rate, and finance charge material disclosures, the Court finds that the alleged

overstatement of the amount financed does not render the TILA disclosures inaccurate.

Although EquiFirst has not specifically raised a tolerances for accuracy defense, the Court

can raise this issue *sua sponte*. *See In re Sterten*, 546 F.3d at 280-81 ("We hold that the defense is

general, and that a defendant need not specifically raise [TILA's] tolerances provision in order to

---

[9] This would be an unlikely scenario. After all, Plaintiff has also alleged that the payment to Shaffer for closing fees and related charges was actually *understated* in the HUD-1 by $35.00. *See* Amended Complaint, at ¶ 35. Assuming, *arguendo*, that this closing fee constitutes a finance charge, *see* 12 C.F.R. § 226.4(a)(2), that would have been

avoid liability for disclosure errors that fall within its range."). Furthermore, the Court notes that disposition of TILA claims is appropriate at the motion to dismiss stage where it is clear that disclosure errors fall within the range of tolerable error. *See e.g.*, *Payan v. Greenpoint Mortg. Funding, Inc.*, 681 F.Supp.2d 564, 571 n.11 (D.N.J. 2010) (dismissing plaintiff's TILA claims on a motion for judgment on the pleadings (wherein the Court employs the same standard of review as on a motion to dismiss) because, *inter alia*, "plaintiffs [ ] fail to allege in their complaint if GreenPoint's purportedly inaccurate disclosures rise above the TILA's tolerances for accuracy" (internal quotation marks omitted)); *Wade v. New Century Mortg. Corp.*, No. 03-7401, 2004 WL 2211617, at *2 (N.D. Ill. Sept. 30, 2004) (dismissing plaintiff's TILA claims where inaccuracy in the finance charge did not exceed TILA tolerance limits); *Marquez v. New Century Mortg. Corp.*, No. 03-7136, 2004 WL 742205, at *3 (N.D. Ill. Apr. 5, 2004) (dismissing plaintiff's TILA claims where the alleged understatement was still in the permissible range of the tolerance for accuracy); *VanDenBroeck.*, 22 F.Supp.2d at 689 (dismissing plaintiff's TILA claims where plaintiff had alleged an *overstatement* of the disclosed finance charge). Plaintiff has not, in her Amended Complaint or in her Opposition to EquiFirst's Motion to Dismiss, addressed the application of TILA's tolerances for accuracy to her claims. Taking all Plaintiff's allegations in her Amended Complaint as true and drawing all reasonable inferences arising therefrom, Plaintiff has not stated a plausible claim that the disclosure errors would exceed TILA's tolerances for accuracy.

That Plaintiff's allegations are heretofore insufficient, is not to say that they will necessarily be insufficient. Crucial components of her TILA rescission claim are not found in the Amended Complaint, as Defendant argues. *See* EquiFirst's Reply Memorandum, at 3 ("Plaintiff provides no factual allegations regarding the alleged inaccuracy of the amount financed in her Amended

---

understated by $35.00, and accordingly, the amount financed would be increased by $35.00.

Complaint. Without these allegations, Plaintiff has failed to make a plausible claim for rescission."). Even Plaintiff's briefing with respect to EquiFirst's Motion to Dismiss does not fully elucidate the manner in which her alleged inaccuracies would exceed TILA's tolerances for accuracy. Plaintiff has requested leave to amend, if the Court finds that the Amended Complaint's allegations on the TILA rescission claim are not plausible. As the Court has so found, Plaintiff will be granted 14 days from the date of the issuance of this Memorandum Opinion and Order to state a plausible claim that the disclosure errors in the HUD-1 exceed TILA's tolerances for accuracy.

## 2. Notice of Right to Cancel

Plaintiff has also argued that her right to rescind the Second Refinance Loan was extended from three days to three years because she "received only one copy of the Notice of Right to Cancel." Amended Complaint, at ¶ 78; *see also* Plaintiff's Opposition to EquiFirst's Motion to Dismiss, at 13.

EquiFirst argues in its Motion to Dismiss that the alleged failure to provide Plaintiff with two copies of the Notice of Right to Cancel is insufficient to so extend her time to rescind the transaction, on the grounds that: (1) attached documentation indicates Plaintiff actually received two copies of the Notice of Right to Cancel; and (2) even if Plaintiff only received one copy, this "minor oversight" should not give rise to a rescission claim in light of the equitable considerations implicated therein. *See* EquiFirst's Memorandum in Support of Motion to Dismiss, at 7; EquiFirst's Reply Memorandum, at 3-4.

The Court finds EquiFirst's reliance on the *Byron* case to be persuasive.[10] *Byron v. EMC Mortg. Corp.*, No. 3:09-cv-197, 2009 WL 2486816 (E.D. Va. Aug. 10, 2009). Therein, the court

---

[10] Recognizing, of course, that *Byron* did not concern an allegation that the lender had failed to provide the borrower with required material disclosures, had failed to properly calculate the required material disclosures. *See* 2009 WL

reiterated the Fourth Circuit's explanation that TILA's requirements must be "reasonably construed and equitably applied," *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 819 n.4 (4th Cir. 2007), and that the right to rescind under TILA (which is an equitable remedy) should not be enforced if it would "deprive the lender of its legal due." *Powers v. Sims*, 542 F.2d 1216, 1222 (4th Cir. 1976).

Like the court in *Byron*, the instant case concerns an allegation that the Plaintiff received only one copy of the Notice of Right to Cancel, instead of the two required by TILA. What Plaintiff has not alleged, is whether, or how, she was damaged by this violation. More importantly, Plaintiff has not alleged that she did not receive actual notice of the right to rescind the transaction. The failure to allege that the disclosure violation caused her harm, or that she did not receive actual notice of the right to rescind, weighs heavily against Plaintiff as the Court considers whether the equitable remedy of rescission is appropriate. *See Byron*, 2009 WL 2486816, at *4 (where plaintiff "pleaded no facts alleging that she was damaged by this minor oversight," and where there were no allegations "that she did not receive actual notice of her right to rescind the transaction," the court held that "[e]quitable considerations thus preclude [p]laintiff's claim for relief on these facts"); *see also Martenson v. RG Financing*, No. 09-cv-1314, 2010 WL 334648, at * 10 (D. Ariz. Jan. 22, 2010) (finding plaintiff not likely to succeed on the merits of a rescission claim under TILA, because, *inter alia*, plaintiff "does not allege that receiving only one copy [of the Notice of Right to Cancel] prevented her from exercising her right to cancel or that she would have exercised the right if she had received two copies"); *Burgueno v. GMAC Bank*, No. 08-cv-1642, 2009 WL 2219282, at *2 (D. Ariz. July 23, 2009) (finding that plaintiff's alleged facts "stop short of establishing the plausibility of his allegation of improper notice of his right to rescind the transaction," where plaintiff had

---

2486816, at *1 (noting that plaintiff's only claim was that "notice of her right to rescind was inadequate because she received only one copy of the [Notice of Right to Rescind], instead of the two copies required by TILA regulations"). The additional allegations that are present in the instant case, which were not present in *Byron*, have been previously

alleged that he only received one copy of the Notice of Right to Cancel, and alleged that his signed acknowledgment of receipt of two copies was "patently false").

Accordingly, upon the facts of this case, the Court finds that Plaintiff has not stated a plausible claim for rescission due to EquiFirst's alleged failure to provide her with two copies of the Notice of Right to Cancel. As such, and as the Court has also found that Plaintiff has not alleged facts supporting a plausible claim that the TILA disclosures were inaccurate, the Court will dismiss Plaintiff's rescission claim under TILA.

### B. Damages

In Plaintiff's cause of action under TILA (asserted against EquiFirst and Wells Fargo) she seeks, *inter alia*, statutory damages in the amount of $2,000.00, and actual damages in the amount of $38,515.15. *See* Amended Complaint, at 11.

First, EquiFirst contends that Plaintiff's claim for money damages is barred by the one-year statute of limitations for damages under TILA. *See* EquiFirst's Memorandum in Support of its Motion to Dismiss, at 4-5. According to EquiFirst, "Plaintiff alleges that a violation of TILA and Regulation Z, TILA's implementing regulation, occurred because the TILA disclosures provided to Plaintiff were 'not accurate and Plaintiff received only one copy of the Notice of Right to Cancel.'" *Id.* at 4 (quoting Amended Complaint, at ¶ 78). Because the Second Refinance Loan closing occurred on March 22, 2007, EquiFirst argues that Plaintiff was "required to file her purported TILA damages action against EquiFirst no later than March 22, 2008." *Id.* at 5.

The statute of limitations governing civil actions for money damages under TILA, which is 15 U.S.C. § 1640(e), provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of

---

addressed in this Memorandum Opinion.

the occurrence of the violation." The Second Refinance Loan, which is at issue here, was consummated on March 22, 2007, *i.e.*, the date of closing. *See* Amended Complaint, at ¶ 23. Plaintiff did not file her Original Complaint until March 20, 2009, and she did not assert a claim under TILA until May 15, 2009. Accordingly, to the extent that Plaintiff claims money damages arising from the allegedly improper TILA disclosures, or from her allegation that she only received one copy of the Notice of Right to Cancel, *see* Amended Complaint, at ¶ 78, these claims are barred as untimely under the applicable one-year statute of limitations. *See e.g.*, *Caminero v. Wells Fargo Bank, N.A.*, No. 1:07-cv-800, 2008 WL 640264, at *4 n.2 (E.D. Va. Mar. 5, 2008).

However, contrary to EquiFirst's assertion, the pertinent "date of the occurrence of the violation" for purposes of 15 U.S.C. § 1640(e) is not invariably the date of the consummation of the loan transaction. Instead, the Court must look to the nature and circumstances of the particular TILA violation claimed by a plaintiff. In this case, notwithstanding any attempted claim for damages directly arising from the allegedly improper TILA disclosures or her receipt of only one Notice of Right to Cancel Form, Plaintiff has also clearly alleged that EquiFirst and Wells Fargo refused to rescind the Second Refinance Loan where they were required to do so under TILA. *See* Amended Complaint, at ¶¶ 81-84. This is evinced by the style of the TILA claim as "Truth-in-Lending Act Failure to Rescind." *See id.* at 10.

Assuming, *arguendo*, the existence of a properly-stated claim for rescission under TILA, EquiFirst and Wells Fargo would have had 20 days in which to comply. *See* 15 U.S.C. § 1635(b) ("Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the

transaction."). For an alleged violation stemming from a creditor's failure to properly comply with a notice of rescission, TILA's one-year statute of limitations begins to run from the expiration of this twenty day period, not the date of the consummation of the underlying loan. *See Tucker v. Beneficial Mortg. Co.*, 437 F.Supp.2d 584, 589 (E.D. Va. 2006) (citing *Malfa v. Household Bank, F.S.B.*, 825 F.Supp. 1018, 1020 (S.D. Fla. 1993)); *Mount v. LaSalle Bank Lake View*, 886 F.Supp. 650, 651-52 (N.D. Ill. 1995). Because the Court has held, *infra*, Plaintiff did not have a valid rescission claim, EquiFirst and Wells Fargo are not liable for statutory or actual damages stemming from the failure to comply with a notice of rescission. To the extent that Defendants violated TILA, a claim for damages arising therefrom must have been brought within one year of the date of such violations, being March 22, 2007, the date of the closing. Therefore, Plaintiff's claims for damages are barred by the statute of limitations.

Accordingly, the Court will dismiss Plaintiff's sole federal cause of action arising under the federal Truth in Lending Act, *without prejudice*. If Plaintiff does not properly amend this cause of action within 14 days, the Court will decline supplemental jurisdiction, and the surviving state law claims will be remanded to state court. *See e.g.*, *Miller v. Terramite Corp.*, 114 F. App'x 536, 540-41 (4th Cir. 2004) ("When the district court has dismissed the claims over which it has original jurisdiction, it 'may decline to exercise supplemental jurisdiction.'" (quoting 28 U.S.C. § 1367(c)(3))); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (noting that "[r]ecent case law has emphasized that trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished"). While the duration of this action weighs in favor of the exercise of supplemental jurisdiction, because the pleadings do not readily evince underlying issues of federal policy that are implicated by the remaining state-law claims (without the pending TILA claim), and because the parties have not engaged in extensive

motions practice in federal court, the Court in its discretion would decline to exercise supplemental jurisdiction. Therefore, if Plaintiff does not properly amend her TILA claim within 14 days to make allegations giving rise to a plausible claim that the inaccuracies exceed TILA's tolerances for accuracy, Plaintiff's remaining state law claims will be remanded to the Circuit Court of the City of Charlottesville, for disposition.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this  5th  day of August, 2010.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE