# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SARAH C. YARNEY, *Plaintiff,* | CASE NO. 3:09-cv-00050 |
| v. | MEMORANDUM OPINION |
| WELLS FARGO BANK, N.A. ET AL, *Defendants.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Statewide Mortgage Corp.'s (hereinafter "Statewide") Motion to Dismiss (docket no. 22). After full consideration of the arguments set forth therein, and presented to the Court at oral argument, for the aforementioned reasons, the Court will GRANT IN PART and DENY IN PART Statewide's Motion to Dismiss (docket no. 22), in an accompanying Order, to follow.

## I. BACKGROUND[1]

Plaintiff Sarah C. Yarney (hereinafter "Plaintiff") has filed suit against EquiFirst, Statewide, and the current holder of the note, Defendant Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") (collectively "Defendants"), alleging that she was the victim of predatory lending practices, which resulted in a refinancing that was at a higher rate than that initially promised her and which resulted in the accumulation of exorbitant fees.

---

[1] Unless otherwise stated, the background will be drawn from Plaintiff's Second Amended Complaint (docket no. 44), which, as to Defendant Statewide, are substantially similar if not identical to the allegations set forth in Plaintiff's Amended Complaint. On a motion to dismiss, the Court must take all well-pleaded material allegations as admitted, and view them in the light most favorable to the plaintiff. *See e.g.*, *Dunn v. Borta*, 369 F.3d 421, 423 n.1 (4th Cir. 2004) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991)).

The underlying subject matter of this dispute, being Plaintiff's principal place of residence, is the property located at 718 West Street, Charlottesville, Virginia (hereinafter "the Property"). There are two refinancing transactions of Plaintiff's home mortgage loan that are pertinent to the parties' dispute. Plaintiff obtained the first refinancing of her home mortgage loan through broker Statewide on April 28, 2006 (hereinafter "First Refinance Loan"). While Plaintiff alleges that she was originally promised an initial interest rate of 2.5% on this loan, the actual interest rate delivered at closing was 6.84%. Furthermore, Plaintiff alleges that Statewide, through its President and Chief Executive Officer Brian E. Lacy (or through its other employees) promised Plaintiff that if she made timely payments on the First Refinance Loan for one year, her loan would be refinanced at a lower interest rate. The mortgage lender for the First Refinance Loan was Decision One Mortgage Company, LLC; EquiFirst was not involved. The terms of the First Refinance Loan were as follows: the principal loan amount was $152,000.00, the initial interest rate was 6.84%, and the total monthly mortgage payment was $1,024.49.

At least as early as January 2007, Plaintiff alleges that Statewide began to periodically solicit her, by phone and mail, to refinance her home mortgage loan again through Statewide. Plaintiff responded to these solicitations by expressing interest in obtaining another refinancing of her home mortgage loan, in reliance upon Statewide's promise to refinance at a lower interest rate, and doing so "for the purpose of obtaining the lower interest rate promised and paying off other debt."

On March 8, 2007, Plaintiff applied to Statewide over the phone seeking this lower interest rate. On March 13, 2007, Statewide mailed Plaintiff a Mortgage Broker Contract signed by Brian Lacey, which stated as follows: "I represent you, but I may receive a fee from a lender. I am your agent and I will get you the most favorable mortgage loan that meets your objectives . . . For arranging your loan of up to $192,000 at an interest rate of 8.550%, I will receive no greater than

$399 Proc. Fee + 2.0% points and other compensation of 1.0%, so that my total compensation will be no greater than 3.0% + $399 Proc. Fee." Plaintiff then signed the Mortgage Broker Contract. Defendant Shaffer Title & Escrow, Inc. (hereinafter "Shaffer"), in the role of a settlement agent for this subsequent refinancing transaction, made arrangements for the closing to take place at Plaintiff's residence. On March 22, 2007, Plaintiff obtained the second refinancing of her home mortgage loan, again using Statewide as the broker, and this time with EquiFirst as the mortgage lender (hereinafter "Second Refinance Loan"). The terms of the Second Refinance Loan were as follows: the principal loan amount was $192,000.00, 2 year fixed, 6 month adjustable rate mortgage, with a balloon payment of $174,609.34 at the end of the loan. Plaintiff alleges that she fell victim to Defendants' predatory lending practices, which caused her to incur exorbitant fees for a loan that was not at the lower rate promised, and not in her best interest.

Plaintiff's Second Amended Complaint contains the following causes of action against Statewide: (1) violations of the Virginia Mortgage Lender and Broker Act, Va. Code § 6.1-408 *et seq*. (hereinafter "MLBA"); (2) violations of the Virginia Home Solicitation Sales Act, Va. Code § 59.1-21.1 *et seq*. (hereinafter "VHSSA"); (3) breach of contract; and lastly (4) violations of the Virginia Consumer Protection Act, Va. Code § 59.1-196 *et seq*. (hereinafter "VCPA").[2]

Statewide, by Response dated September 8, 2010 (docket no. 48), has asserted that it "is no longer conducting business, [and] has ceased all operations," but to the extent necessary, refers the Court and Plaintiff to the instant Motion to Dismiss. Therefore, to the extent necessary, the Court

---

[2] Plaintiff has also raised a common law fraud claim solely against Statewide. *See* Second Amended Complaint, at ¶¶ 68 – 75. However, in the briefing on the pending motion to dismiss, Plaintiff asked that the Court dismiss this claim. *See* Plaintiff's Opposition to Defendant Statewide's Motion to Dismiss, at 15 (docket no. 29) ("After further review of Virginia law and because her other claims put in issue liability for the same actions and actual damages, Plaintiff has decided not to pursue her fraud claim. Accordingly, she requests that it be dismissed from this action."). Accordingly, Plaintiff's cause of action for fraud will be dismissed against Statewide.

will address the several arguments raised in Statewide's Motion to Dismiss, even though it appears that it is no longer a viable business operation.

## II. APPLICABLE LAW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (internal citations omitted). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005).

In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a Motion to Dismiss." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1950 (2009).

## III. DISCUSSION

### A. VIRGINIA MORTGAGE LENDER AND BROKER ACT

Plaintiff claims that Statewide violated the MLBA, specifically Va. Code § 6.1-422.1(B), by "knowingly and intentionally 'flipping' Plaintiff's mortgage loan within twelve months of the origination of the 2006 refinanced mortgage, even though the refinance was clearly not in Plaintiff's best interest." Plaintiff alleges that Statewide satisfies the definition of a "mortgage broker" within the meaning of the MLBA. *See* Va. Code § 6.1-409.

Statewide argues that Plaintiff's MLBA claim against it should be dismissed with prejudice on the grounds that Plaintiff has not sufficiently pled that the loan was not in her "best interest," as required under the MLBA. *See* Va. Code § 6.1-422.1(A) (defining "flipping" as "refinancing a mortgage loan within 12 months following the date the refinanced mortgage loan was originated, unless the refinancing is in the borrower's best interest"). In support of this argument, Statewide specifically relies on the fact that Plaintiff admitted that she received over $25,000.00 from the Second Refinance Loan for the purposes of paying off other debt.

The Court finds that Plaintiff has adequately pled her MLBA claim against Statewide to survive its Motion to Dismiss. Plaintiff argued and attached documentation to support her contention that, *inter alia*, she was solicited by Statewide to refinance her home mortgage loan within twelve months of her prior refinancing with Statewide. *See e.g.* Second Amended Complaint, at ¶¶ 6, 11 – 12, 23. Plaintiff has argued and attached documentation to support her contention that the Second Refinance Loan was "clearly not in her best interest," *id*. at ¶ 42, on the grounds that it resulted in "exorbitant fees," and a higher rate of interest than her prior home mortgage loan, *see id*. at ¶¶ 17,

25, 26; ex. D, H, J. Finally, she has sought relief under the MLBA against Statewide, whom she alleged was a "mortgage broker" within the meaning of the MLBA. *Id.* at ¶ 41.

The MLBA lists as one factor in considering whether a refinancing is in the borrower's best interest whether "[t]he borrower receives cash in excess of the costs and fees of refinancing," Va. Code § 6.1-422.1(A)(3), and, as Statewide has pointed out, Plaintiff admits that she received approximately $25,000.00 as a result of the Second Refinance Loan (or substantially in excess of the costs and fees of the refinancing). *See* Second Amended Complaint. at ¶ 32; ex. H, J. However, other factors cited in the MLBA cut in favor of Plaintiff, such as the fact that the borrower's new monthly payment was not "lower than the total of all monthly obligations being financed, taking into account the costs and fees." Va. Code § 6.1-422.1(A)(1). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952. While disposition of Plaintiff's MLBA causes of action against Statewide may be appropriate on summary judgment, the Court finds that she has alleged enough factual allegations "to raise a right to relief above the speculative level," which is sufficient to survive the motion to dismiss. *Twombly*, 550 U.S. at 555. *Cf. Johnson v. D & D Home Loans Corp.*, No. 2:07-cv-204, 2007 WL 4355278, at * 3 (E.D. Va. Dec. 6, 2007) (holding that plaintiffs' allegations under the MLBA survive motion to dismiss where plaintiffs alleged the defendant acted as a mortgage broker, in spite of factual dispute raised that defendant was not acting as plaintiffs' mortgage broker).

Accordingly, Plaintiff's claim against Statewide under the MLBA will not be dismissed.

### B. VIRGINIA HOME SOLICITATION SALES ACT

Plaintiff has alleged that Statewide's Contract with Plaintiff to provide brokerage services constituted a "home solicitation sale" within the meaning of the Virginia Home Solicitation Sales

Act (VHSSA). *See* Second Amended Complaint, at ¶ 45. Furthermore, Plaintiff alleges that

Statewide violated the VHSSA, and specifically Va. Code § 59.1-21.4, by "failing to provide

Plaintiff with notice of her right to cancel the Contract for brokerage services as required, and by

failing to comply with the statute when Plaintiff cancelled her Contract for brokerage services in

2009." *Id.* at ¶ 46.

In response, Statewide argues that the VHSSA does not apply because the transaction at issue

here, being the mailing and signing of its contract to provide brokerage services, is not a "home

solicitation sale," within the meaning of the VHSSA, Va. Code § 59.1-21.2(A). Because the Court

finds that this transaction did not constitute a home solicitation sale within the meaning of the

VHSSA, this claim against Statewide will be dismissed.

The VHSSA provides that a "home solicitation sale" includes two requirements:

> 1. A consumer sale or lease of goods or services in which the seller or
> a person acting for him engages
>
> > (i) in a personal solicitation of the sale or lease or
> >
> > (ii) in a solicitation of the sale or lease by telephonic or other
> > electronic means at any residence other than that of the seller;
> > and
>
> 2. The buyer's agreement or offer to purchase or lease is there given
> to the seller or a person acting for him.

Va. Code § 59.1-21.2(A).

Statewide argues that the VHSSA does not apply to this transaction because the second

requirement was not satisfied, *i.e.*, that the "buyer's agreement or offer to purchase or lease" was not

"there given to the seller or a person acting for him." Instead, Statewide identifies that the factual

circumstances underlying this dispute clearly show that the second requirement was not satisfied.

Accepting Plaintiff's allegations as true and drawing all reasonable inferences in her favor, as early

as January of 2007, Statewide began sending Plaintiff mail and phoning her regarding refinancing her home. *See* Second Amended Complaint, at ¶ 11. Then, "[o]n March 8, 2007, Plaintiff applied to Statewide over the phone for the lower interest rate she had been promised." *Id.* at ¶ 15. However, crucially, there is no contention or allegation that Statewide initiated the call on this date. Finally, Plaintiff alleges that "[o]n March 13, 2007, [she] received in the mail and signed a Mortgage Broker Contract . . . with Statewide, signed by Brian E. Lacey." *Id.* at ¶ 17.

There is, as Statewide contends, a dearth of authority applying and interpreting the VHSSA. However, in the context of the present dispute, the Court is not presented with a questionable case of the applicability of the VHSSA. There was, according to Plaintiff's Second Amended Complaint, no instance where Statewide engaged Plaintiff in an instance of solicitation, in which her "agreement or offer to purchase or lease [was] *there given to the seller or a person acting for him*." Va. Code § 59.1-21.2(A)(2) (emphasis added). Plaintiff did not allege that Statewide initiated the March 8, 2007 call, during which she applied to Statewide over the phone for a refinancing. Neither did Plaintiff make any allegations as to how much time had passed between the March 8, 2007 call with Statewide, and Statewide's most recent communication with her about refinancing the Property. While she states that she was contacted "periodically" by Statewide "at least as early as January 2007," the Second Amended Complaint does not provide whether it was days, weeks, or over a month between the date of Statewide's last alleged solicitation, and the March 8, 2007 call during which she applied to Statewide for a refinancing. Furthermore, several days after this call, Plaintiff received in the mail the Mortgage Broker Contract that had been signed by Statewide. She alleges that she signed it, but does not allege facts supporting the proposition that it was "there given to the seller or a person acting for him."

A review of comparable home solicitation sales statutes from other jurisdictions supports the Court's conclusion that this transaction, being the execution of the Mortgage Broker Contract between Plaintiff and Statewide, and the circumstances under which this Contract was signed by the parties, does not fall within the purview of the VHSSA. Accordingly, Plaintiff's claim against Statewide under the VHSSA will be dismissed.

## C. BREACH OF CONTRACT

Plaintiff argues that, as provided in her Mortgage Broker Contract with Statewide, the parties had agreed that Statewide "will receive no greater than $399 Proc. Fee + 2.0% points and other compensation of 1.0%, so that my total compensation will be no greater than 3.0% + $399 Proc. Fee." *See* Second Amended Complaint, at ¶ 49; ex. D. Plaintiff argues that "Statewide breached the Contract by accepting a payment from the lender in excess of the 1% limit on 'other compensation,'" and that "[a]s a direct consequence of Statewide's breach, Plaintiff has suffered financial and emotional damages, including but not necessarily limited to the costs and fees paid to Defendant and others in the subject transaction." *Id.* at ¶¶ 51, 53.

The elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to plaintiff caused by the breach of that obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 671 S.E.2d 132, 135 (2009) (quoting *Filak v. George*, 267 Va. 612, 594 S.E.2d 610, 614 (2004)). Defendant challenges Plaintiff's breach of contract claim for failure to satisfy the third element, arguing that "the allegations fail to support any contention that the purported breach resulted in Yarney sustaining any damages." Statewide's Reply, at 6. The Court finds that Plaintiff has sufficiently pleaded a breach of contract claim, and the issues raised in Statewide's Motion to Dismiss are more appropriately addressed on a motion for summary judgment. Plaintiff alleges that

her damages flow from, but are not limited to, "the costs and fees paid to Defendant and others in the subject transaction." Second Amended Complaint, at ¶ 53. Although Plaintiff does not claim that surplus profits Statewide received in excess of its contractual obligation constitute her measure of damages, the inquiry is whether there was "injury or damage to the plaintiff caused by the breach of obligation." *Eke v. Bank of America, N.A.*, Civil Action No. 3:09-cv-488, 2010 WL 3122806, at *4 (E.D. Va. Aug. 6, 2010) (quoting *E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 688 F.Supp.2d 443, 462 (E.D. Va. 2009)). Plaintiff has pleaded that the terms of the Second Refinance Loan were as follows: the principal loan amount was $192,000.00, 2 year fixed, 6 month adjustable rate mortgage, with a balloon payment of $174,609.34 at the end of the loan, and with her initial monthly payments consisting of principal and interest of $1,387.60. *See* Second Amended Complaint, at ¶¶ 29, 30. Plaintiff has pleaded that these were the terms procured for her by Statewide, with whom she had contracted to be her mortgage broker. *Id.* at ¶¶ 17, 20, 25, 29. As a result of Statewide's alleged breach of the contract, Plaintiff alleges that Statewide "placed client in a more costly loan than she was promised." *Id.* at ¶ 53. Given Plaintiff's allegations as to the terms and cost of her loan, the Court finds that Plaintiff has adequately stated a breach of contract claim, and this will not be dismissed.

### D. VIRGINIA CONSUMER PROTECTION ACT

Finally, Plaintiff argues that Statewide violated the VCPA, on several bases, namely (1) "by misrepresenting that it would obtain for Plaintiff the most favorable loan terms consistent with her goals, by misrepresenting that the new loan would be at a lower interest rate, and by misrepresenting the fee it would accept from the lender," and (2) "by failing to provide Plaintiff with notice of her right to cancel per VHSSA . . . and failing to honor Plaintiff's notice of cancellation." Second Amended Complaint, at ¶¶ 56, 57.

The VCPA generally prohibits the misrepresentation of goods or services, and in order to state a claim under the VCPA, a plaintiff "must allege: (1) fraud and that the consumer relied on the fraud; (2) by a supplier; (3) in a consumer transaction." *Myers v. Lee*, No. 1:10-cv-131, 2010 WL 2757115, at *5 (E.D. Va. July 12, 2010) (citing *Enomoto v. Space Adventures, Ltd.*, 624 F.Supp.2d 443, 456 (E.D. Va. 2009)). Because a claim under the VCPA is one "sounding in fraud," Federal Rule of Civil Procedure 9(b)'s particularity requirements apply. *See Nihigian v. June Loudoun, LLC*, 684 F.Supp.2d 731, 741 (E.D. Va. 2010). The Court has found that the present transaction did not fall within the purview of the VHSSA, and as a result, Plaintiff's second basis for a VCPA violation must fail. However, Plaintiff has adequately pleaded misrepresentations on the part of Statewide to satisfy the heightened pleading standards of Rule 9(b), and the issues raised in Statewide's Motion to Dismiss are more appropriately raised upon a motion for summary judgment.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 15th day of September, 2010.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE